684 P.2d 983

**Max DALTON, Plaintiff-Appellant,**

v.

**IDAHO DAIRY PRODUCTS COMMISSION, Idaho Dairy Council and United Dairymen of Idaho, Defendants-Respondents.**

**No. 14737.**

Supreme Court of Idaho.

July 13, 1984.

Dan Edwards, Eagle, for plaintiff-appellant.

William Parsons, Burley, for defendants-respondents.

BISTLINE, Justice.

The plaintiff in the present case, Max Dalton, is in the business of providing services to dairymen, including disease testing, butterfat content testing, breeding services, and computerized dairy management. The plaintiff seeks by way of a writ of mandate to compel defendant, Idaho Dairy Products Commission,[1] a self-governing agency, to disclose its list of the names and addresses of all Idaho dairy farmers. The plaintiff alleges that he needs the list to aid him in a direct mail advertising campaign for which he has no other source of information. The plaintiff has contended throughout that the membership list to which he seeks access is a public record subject to inspection by authority of statute.

The defendant Commission has, however, steadfastly refused to supply the sought-after list. The names sought by the plaintiff are those of producers of dairy products received by the Commission from dairy product dealers. The dealers collect taxes from the producers pursuant to I.C. § 25–3117. The Commission contends that the dealers provided the names of these producers-suppliers in exchange for a promise of confidentiality. It argues that to disclose the list of these names would both breach this confidentiality and jeopardize a valuable property right of the deal-

ers by opening up to the public and thereby exposing to the vagaries of competitive bidding, a customer list acquired through painstaking travail. In order to avoid such a result, the Commission argues that the dealers would, in the future, refuse to provide this information, as they are not presently required to do so by statute. Finally, the Commission contends that because the requested list was not required to be given to the Commission, it is not a public record and thus there is no mandatory duty to disclose it to the plaintiff.

The district court denied plaintiff's motion for summary judgment and subsequently granted summary judgment for defendant. In denying plaintiff's motion for summary judgment, Judge Newhouse adopted the view urged by the Commission:

"This Court is of the opinion that the statutes and authorities, submitted by the plaintiff, do not apply to mailing lists of members of associations for advertisement purposes. Such mailing lists are valuable property rights, and should not be available to everyone. An association has not only the right, but the duty, to protect its members from possible harassment and solicitations. Members of an association correctly assume that their officers and directors will watch their interests."[2]

R., p. 26.

Because we disagree with the district court, we reverse and remand with directions.

Dalton's argument for disclosure is based upon statutory directives contained in the Idaho Code. I.C. § 9–301 states that "Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provid-

---

1. Though Idaho Dairy Products Commission is joined in this action by co-defendants Idaho Dairy Council and United Dairymen of Idaho, the three defendants are essentially coterminous in nature and are governed by a single board. Therefore, we have simplified our discussion by treating the Commission as if it is the sole defendant.

2. The harassment rationale of the district court notwithstanding, we note in passing that appel-

lant Dalton has stipulated in his brief that, "[a]s to farmers who do not wish to receive advertisements, the plaintiff-appellant will include a notice that he will send no further advertisements if he is notified that the farmer does not want to receive them." Appellant's Brief, p. 2. A stipulation of this type properly entered into should be more than adequate to meet the fears of harassment voiced by respondent Commission and found compelling by the district court.

ed by statute." I.C. § 59–1009 states that "The public records and other matters in the office of any officer are, at all times during office hours, open to the inspection of any citizen of this state." I.C. § 59–1011 states the following:

"It shall be the duty of the state and county officers respectively charged with furnishing books and stationery for public use, to furnish suitable books for the purpose to such officers; *and such books shall be subject to examination by any citizen at any reasonable time,* and such citizen shall be entitled to take memoranda from the same without charge being imposed: provided, if any person or persons desire certified copies of any such account, the officer or person in charge of said books shall be entitled to demand and receive fees for the same, as for copies of other public records in his control." (Emphasis added.)

I.C. § 25–3111 states in pertinent part:

"(3) The commission shall have the duty, power and authority:

. . . .

"(k) To keep books and records and accounts of all its doings, which books, records and accounts shall be open to the inspection and audit by the state auditor and public at all times."

In addition, it should be noted that, unlike many other similar state statutes and the federal Freedom of Information Act, 5 U.S.C.A. § 552, the Idaho statutes referred to above do not contain exemptions of any kind. Although I.C. § 9–301 contains the caveat, "except as otherwise expressly provided by statute," we have neither been directed to nor discovered any such express exception in these statutes. "Where a statute is not ambiguous it is the duty of the court to follow the law as enacted and if the statute is unwise, power to correct is legislative not judicial." *Newlan v. State,* 96 Idaho 711, 716, 535 P.2d 1348, 1353 (1975). "The language in the statutes cited above is neither ambiguous nor uncertain, and it is well established that where the language of the statute is unambiguous,

the clear expressed intent of the legislature must be given effect and there is no occasion for construction." *Swensen v. Buildings, Inc.,* 93 Idaho 466, 468, 463 P.2d 932, 934 (1970). Therefore, unless the defendant Commission can show either that mandamus is the wrong remedy for appellants to seek or that the statutes cited above somehow do not apply to the Commission, we have no choice but to order disclosure of the documents in question.

■ We initially note that mandamus is the proper remedy for one in appellant's position. Under I.C. § 7–302, the granting of a writ of mandate is "to compel the performance of any act which the law especially enjoins as a duty resulting from the office." In addition, under our prior decisions, a writ of mandate will issue to any party who has a clear legal right to have an act performed if the officer against whom the writ is sought has a clear duty to act and if the act sought to be compelled is ministerial in nature and does not require an exercise of discretion. *Saviers v. Richey,* 96 Idaho 413, 529 P.2d 1285 (1974). In the present case, assuming the list of names sought to be disclosed is a public record within the meaning of that term as used in the above cited statutes, it is clear that mandamus is the proper remedy. First, mandamus is an appropriate means of enforcing the right to inspect public records. *Gazette Printing Co. v. Carden,* 163 Mont. 401, 517 P.2d 361 (1973). *See also State Board of Equalization v. Watson,* 68 Cal.2d 307, 66 Cal.Rptr. 377, 437 P.2d 761 (1968); *State ex rel. Cartwright v. Oklahoma Industries Authority,* 629 P.2d 1244 (Okl.1981). Second, it is clear that if the lists are indeed public records, any citizen has a right to inspect them and the state officer or agency charged with their custodianship has a concomitant duty to make them available. It is further clear that the mere act of turning over public documents is purely ministerial in nature, involving no exercise of discretion by the officer or agency charged with its execution. Thus, mandamus is indeed the correct remedy for appellants to seek and

must issue if the document at issue is in fact a public record.

We now turn to the question of whether the list of names to which appellant seeks access is in fact a public record. Respondent Commission argues the following:

"[Although] Idaho Code 25–3117 requires the dealers to collect tax on the producers and remit the same to the Commission within specified time limits ... [t]he statute does not in any respect require the dealer to provide any names of the producers from whom the tax was collected.... Therefore [though] all of the receipts and expenditures of the Commission are certainly open to audit and inspection by the public ... this does not mean that the names of the persons from whom the tax is generated [are] public record as no requirement is set forth in the statute that the names of the producers be provided to the Commission."

Respondent's Brief, p. 4.

Appellant, however, directs our attention to the Oregon case, *MacEwan v. Holm*, 226 Or. 27, 359 P.2d 413 (1961). In that case, the Oregon Supreme Court stated that, "[f]or the purpose of deciding whether a writing is subject to public inspection, we regard all data gathered by the agency in the course of carrying out its duties, irrespective of its tentative or preliminary character, as falling within the definition of 'records and files.' " 226 Or. at 43, 359 P.2d at 420. The Court, in arriving at this view, considered the argument made, *supra*, by respondent:

"It is sometimes said that to constitute a public record the writing must be one which is expressly required or authorized to be kept by law. [Citations omitted.] According to the better view, where the issue is the availability of a writing for inspection, the writing need only constitute a 'convenient, appropriate, or customary method of discharging the duties of the office' by the public officials. A writing need not be a document that is required by law to be kept as a memorial of official action in order to come within

the definition of a 'public record.' " [Citations omitted.]

*MacEwan, supra,* at 41, 359 P.2d at 419. The Oregon court also stated the following:

"Writings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public so that there will be an opportunity to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function as public servants

. . . .

"And the public interest in making such writings accessible extends beyond the concern for the honest and efficient operation of public agencies. *The data collected in the course of carrying on the business of government may be sought by persons who propose to use it for their own personal gain. Thus, they may wish to obtain names and addresses for use as a mailing list, or the record of transfers of property to conduct a title insurance plant, or information for many other purposes. The data gathered by government are available to its citizens for such private purposes.* Under our statutes a person may inspect public records and files for a purely personal purpose; as we have indicated above, he need not show a special interest. [Citations omitted.]

"Since the right of inspection under our statutes is intended to serve these broad purposes, the character of the writing which is subject to inspection is correspondingly broad."

*MacEwan v. Holm*, 226 Or. at 36–39, 359 P.2d at 419 (emphasis added).

■ We agree with the Oregon Supreme Court that the legislature intended the definition of "public records" to be broad enough to include a list of names obtained by an agency in the normal course of carrying out its duties. In addition, we note that, by its terms, I.C. § 59–1009 is not limited to "public records," but rather stipulates that, "The public records *and all other matters in the office of any officer*

are, at all times during office hours, open to the inspection of any citizen of this state." I.C. § 59–1009 (emphasis added). Such language clearly evidences an intent by the legislature to create a very broad scope of government records and information accessible to the public. *Mathews v. Pyle*, 75 Ariz. 76, 251 P.2d 893 (1952). We therefore hold that the list of names sought by appellant and compiled by the Idaho Dairy Products Commission falls within the purview of I.C. § 59–1009 as "public records and all other matters."

However, respondents argue that because they obtained the names from the creameries in confidence, they should not be compelled to turn over these records. We are aware that the court in *MacEwan v. Holm, supra*, stated such a situation as a possible exception to the rule of disclosure:

"The public's right of inspection is not without qualification. There may be circumstances under which the information contained in a record can be justifiably withheld from the person seeking it .... Even where the request is made for a lawful purpose the public interest may require that the information be withheld. Thus where the information is received in confidence, it may be proper to refuse access to it."
226 Or. at 44, 359 P.2d at 420–21.

As stated by the Oregon Court:

"In determining whether the records should be made available for inspection in any particular instance, the court must balance the interest of the citizen in knowing what the servants of government are doing and the citizen's proprietary interest in public property, against the interest of the public in having the business of government carried on efficiently and without undue interference."
226 Or. at 45, 359 P.2d at 421.

Similarly, in *Mathews v. Pyle, supra*, the Arizona Supreme Court held that, in determining whether records other than "public records," i.e., records falling within the scope of "other matters" but outside the strict definition of "public records," should be available for inspection, disclosure is appropriate unless the documents are "confidential or of such a nature that it would be against the best interests of the state to permit a disclosure of their contents." 75 Ariz. at 80, 251 P.2d at 896.

■ We have considered the arguments of respondents as well as the very scholarly and thoughtful approaches set forth by the Supreme Courts of Oregon and Arizona, respectively. We note, however, that the statutes which we must apply quite clearly state either that "public records and other matters in the office of any officer *are ... open to inspection of any citizen of the state,*" I.C. § 59–1009 (emphasis added), or that "every citizen has a right to inspect and take a copy of any public writings of this state, *except as otherwise provided by statute.*" I.C. 9–301 (emphasis added). It is therefore our opinion that balancing tests such as that proposed by the courts of our sister states, *supra*, are beyond the pale of our authority in this instance. We therefore decline to create an exception to the rule of disclosure where one has not been explicitly provided.[3]

Respondent Commission maintains, however, that in the present case there is a relevant statutory exception to its duty of disclosure. I.C. § 25–3111(3)(a) provides

---

**3.** We note in this regard that the legislature has not been hesitant to create such statutory exceptions in favor of confidentiality where it has deemed it to be appropriate. *See, e.g.,* I.C. § 39–606 (providing for the observation of "all possible secrecy for the benefit of the sufferer" with regard to reports to the director of the department of health and welfare concerning the existence of venereal diseases in patients under treatment); I.C. § 16–1511 (providing for the sealing of probate court records in any adoption proceeding); I.C. § 1–2103 (providing

that all papers filed with a judicial counsel in connection with the removal, disciplining, or retirement of judges or justices shall be confidential); I.C. § 9–203(6) (providing for the confidentiality of communications between psychologists employed by any public or private school and any students they may have counseled); I.C. § 66–348 (providing that records relating to the hospitalization of the mentally ill shall be kept confidential with certain enumerated exceptions), etc.

that the Idaho Dairy Products Commission "shall have the duty, power and authority to take such action as the commission deems necessary or advisable in order to stabilize and protect the dairy industry of the state and the health and welfare of the public." It is the Commission's contention that, in agreeing to accept the names of the dairy producers in confidence, it has acted pursuant to this grant of authority by garnering information essential to its regulation of the industry. The Commission further contends that, were the Court now suddenly to mandate disclosure, not only would the Commission be frustrated in its efforts to fulfill its statutory directive, by its inability to gain access to the producers' names, which would no longer be forthcoming from the creameries, but in addition, such action would have the immediate effect on the industry of destabilization, i.e., increased competition among creameries.

■ Our response to respondent's position is severalfold. First, as to the effect of I.C. § 25–3111(3)(a), we agree that it provides the Commission with wide latitude in its regulatory capability. However, the Commission's duty, power, and authority to take action is clearly limited by the legislature's express statutory language in I.C. § 59–1009 mandating that the public records and other matters be open to the inspection of the public.[4]

■ Second, it is our feeling that the Commission's powers under I.C. § 25–3111(3) cut the other way in this argument. It seems clear that the Commission's extensive powers under I.C. § 25–3111(3) provide it with ample authority to compel disclosure of the producer's names in addition to any other information it may need from the creameries. Thus, if pursuant to our holding that the Commission must disclose its list of producer's names, the creameries henceforth refuse to supply the Commission with these names, the Commission may either pass appropriate rules in accordance with the Administrative Procedure Act compelling such disclosure, or the

Commission may seek more specific statutory authorization from the legislature. However, in any event, it is clear that the Commission has not shown the necessity of the confidentiality policy for which it seeks our endorsement.

■ Finally, we note that the Commission may always seek recourse with the legislature. In holding today that disclosure is mandated under our present statutory scheme, we of course are mindful that such a scheme may be amended. Should the legislature decide that such information should indeed be confidential, it may amend the relevant statutes to include exceptions such as that contained in the federal Freedom of Information Act. 5 U.S.C.A. § 552(b)(4). *See, e.g., Sonderegger v. United States Department of Interior,* 424 F.Supp. 847 (D.Idaho 1976). However, until such time as the legislature deems it proper to include exceptions of this type, we have no choice but to enforce the statute as written.

The order of the district court granting summary judgment is reversed and the cause is hereby remanded for further proceedings.

BAKES, J., and McFADDEN, J. Pro Tem., concur.

DONALDSON, Chief Justice, dissenting.

I am of the opinion that the district court's granting of summary judgment in favor of defendants was proper. Therefore, I dissent from the majority's reversal of that summary judgment.

I need not express an opinion on whether the information sought comes within the language of I.C. § 59–1009: "The public records and all other matters in the office of any officer ...." Rather, it is my opinion that even if the list of names does come within I.C. § 59–1009, appellant is not entitled to inspect the list because the information was obtained in confidence.

---

4. *See, e.g., Christensen v. West,* 92 Idaho 87, 90, 437 P.2d 359, 362 (1968), holding that a particular pertinent statute will prevail over a general pertinent statute.

After citing both *MacEwan v. Holm*, 226 Or. 27, 359 P.2d 413 (1961), and *Mathews v. Pyle*, 75 Ariz. 76, 251 P.2d 893 (1952), in support of its proposition that the list of names herein "falls within the purview of I.C. § 59–1009," the majority then disregards the portions of those cases which hold that confidentiality provides an exception to the rule of disclosure. The majority distinguishes these cases by referring to I.C. §§ 59–1009 and 9–301. What the majority fails to point out is that the Oregon statute in *MacEwan* is virtually identical to I.C. § 9–301,[1] and the Arizona statute in *Mathews* is very similar to I.C. § 59–1009.[2] Consequently, I believe the majority opinion is seriously flawed in its analysis by implying that the Idaho statutes are somehow different than those in *MacEwan* and *Mathews*.

There is no dispute that the list of names sought by appellant was obtained by defendants in the strictest confidence. As such, I feel, as did the courts in *MacEwan* and *Mathews*, that the information comes within an exception to the rule of disclosure. Therefore, I would affirm the district court's granting of summary judgment to defendants.

SHEPARD, J., concurs.

---

1. The Oregon statute, ORS 192.010, as quoted in *MacEwan*, 226 Or. at 34, 359 P.2d at 416, reads: "Every citizen of this state has a right to inspect any public writing of this state, except as otherwise expressly provided by statute." I.C. § 9–301 reads: "Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute."

2. The Arizona statute, ACA § 12–412, as quoted in *Mathews*, 75 Ariz. at 78, 251 P.2d at 895, reads: "Public records and *other matters* in the office of any officer are at all times during office hours open to the inspection of any person." (Emphasis in original.) I.C. § 59–1009 reads: "The public records and other matters in the office of any officer are, at all times during office hours, open to the inspection of any citizen of this state."