778 P.2d 815

**Albert L. ERIKSEN and Patricia G. Eriksen, Plaintiffs-Respondents,**

**v.**

**BLUE CROSS OF IDAHO HEALTH SERVICES, INC., Defendant-Appellant.**

No. 17581.

Court of Appeals of Idaho.

Aug. 3, 1989.

Kristi Emig–Mark and Denise C. Baird (argued), Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendant-appellant.

Jeffrey E. Rolig, Hepworth, Nungester, Felton & Lezamiz, Boise, for plaintiffs-respondents.

BURNETT, Judge.

We are asked to review a magistrate's award of attorney fees to the prevailing parties in a contract dispute. The dispositive issues are whether the award is authorized by I.C. § 12–120(3) and, if so, whether the amount awarded is reasonable. The

district court has upheld the award. Today we do the same.

The pertinent facts are undisputed. In 1984, Blue Cross of Idaho Health Services, Inc., entered a contract with Albert and Patricia Eriksen, providing coverage of medical and hospital expenses. Mrs. Eriksen subsequently underwent surgery. Blue Cross paid some of her bills but then refused to make further payments, contending that she had failed to disclose a prior health problem on her application for coverage. Blue Cross unilaterally rescinded the contract, leaving approximately $5,900 in medical bills unpaid and depriving the Eriksens of nearly $1,000,000 in potential coverage of future expenses during the remaining contract term.

The Eriksens sued for breach of contract. Blue Cross counterclaimed, seeking to recover the payments made before the rescission. After a five-day trial, a jury found in favor of the Eriksens. The magistrate entered judgment reinstating the contract and awarding the Eriksens the amount of their unpaid bills, less the monthly premiums that would have been paid but for the rescission—a net award of approximately $2,300. The magistrate also awarded prejudgment interest, costs, and an attorney fee of $25,359. Blue Cross appealed the attorney fee award. The district court affirmed. Blue Cross appealed again, bringing the case to us.

## I

The magistrate grounded the attorney fee award upon I.C. § 12–120(3), as amended on July 1, 1986. The district court upheld the award on that basis and also suggested that the award could be premised on I.C. § 41–1839, the statute which authorizes attorney fee awards against insurance companies for wrongful failure to pay claims. This alternative suggestion was nullified by *Howard v. Blue Cross of Idaho Health Service, Inc.*, 114 Idaho 485, 757 P.2d 1204 (Ct.App.1988) (petition for review denied). In that case, a majority of this Court held that Blue Cross—a professional service corporation governed by chapter 34, title 41, of the Idaho Code—is not an insurance company within the meaning of I.C. § 41–1839. The 1988 Legislature promptly responded to *Howard* by making I.C. § 41–1839 applicable to corporations like Blue Cross. *See* I.C. § 41–3434(17). Nevertheless, in an addendum to the *Howard* opinion, we held that the new statute could not be applied retroactively. 114 Idaho at 492, 757 P.2d at 1211. That holding also precludes the application of I.C. § 41–1839 to the instant case.

Therefore, the dispositive question in this appeal is whether an attorney fee award is authorized by I.C. § 12–120(3), as originally declared by the magistrate. With its amendment on July 1, 1986, the statute mandates the award of a reasonable attorney fee to the prevailing party "[i]n any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or *contract relating to the purchase or sale of* goods, wares, merchandise, or *services* and in any commercial transaction unless otherwise provided by law...." (Emphasis added.) Blue Cross argues that the statute is inapposite for two reasons: (a) the contract with the Eriksens does not relate to a purchase or sale of "services," and (b) even if the contract does relate to "services," it antedates the 1986 amendment that put the word "services" in the statute. We will address these arguments in turn.

## A

Readers of this Court's decision in *Howard* may be surprised to see Blue Cross claiming today that its contracts with subscribers do not relate to the purchase or sale of "services." In *Howard* Blue Cross argued that it was not an insurer but was instead a service provider. A majority of this Court was persuaded by that argument, and Blue Cross thereby avoided liability for attorney fees under I.C. § 41–1839. Blue Cross will not now be heard to insist that it is something other than a service provider. We hold that the Eriksen contract relates to a purchase or sale of services.

In a narrower vein, Blue Cross contends that even if it is a service provider, the

services it provides do not come within the purview of I.C. § 12–120(3). Blue Cross maintains that the statute's reference to "services" is limited by the subsequent mention of a "commercial transaction." The statute goes on to define "commercial transaction" as "all transactions except transactions for personal or household purposes." Thus, Blue Cross asserts that its services are outside the statute because they are incident to a "commercial transaction ... for personal or household purposes."

The linchpin of Blue Cross's argument is the supposed limitation of the term "services" by the words "commercial transaction." We have held that other terms preceding the words "commercial transaction," such as "open account, account stated, note, bill or negotiable instrument," are not limited by the ensuing reference to purchase or sale of "goods, wares, [or] merchandise." *See Cheney v. Smith,* 108 Idaho 209, 697 P.2d 1223 (Ct.App.1985); *Camp v. Jiminez,* 107 Idaho 878, 693 P.2d 1080 (Ct.App.1984); *Boise Truck & Equipment, Inc. v. Hafer Logging, Inc.,* 107 Idaho 824, 693 P.2d 470 (Ct.App.1984). By parity of construction, we believe that "services" and the other enumerated elements of I.C. § 12–120(3) are not limited by the words "commercial transaction." Moreover, it is well settled that statutes should not be read to create surplusage. *Hartley v. Miller–Stephan,* 107 Idaho 688, 692 P.2d 332 (1984). If the words preceding "commercial transaction" were treated merely as examples of the types of commercial transactions to which the statute could apply, they would be no more than surplusage.

We deem it clear that the Legislature put the term "commercial transaction" in this statute, not to narrow its scope, but to extend its coverage to litigation arising from commercial disputes as well as from certain non-commercial disputes. This intent is evinced by the Legislature's use of the conjunctive phrase *"and* in any commercial transaction" (emphasis added). Consequently, we need not decide whether the Eriksen contract, which is a contract for the sale of services, also involves a commercial transaction other than for per-

sonal or household purposes. Because all service contracts are encompassed by I.C. § 12–120(3), the statute was correctly applied to this case.

**B**

We next consider Blue Cross's argument that because the Eriksen contract was formed prior to 1986, the amended version of I.C. § 12–120(3) is inapplicable, even though the lawsuit was filed on July 14, 1986—about two weeks after the amendment. Blue Cross relies primarily on two cases: *Myers v. Vermaas,* 114 Idaho 85, 753 P.2d 296 (Ct.App.1988), and *Penrose v. Commercial Travelers Insurance Co.,* 75 Idaho 524, 275 P.2d 969 (1954). In *Myers,* we held that the 1986 amendment to I.C. § 12–120 should not be applied to *lawsuits filed* before the amendment came into effect. In *Penrose,* the Supreme Court refused to apply an insurance statute, which authorized awards of attorney fees, to a lawsuit involving an insurance contract existing before the statute's enactment. Drawing selectively from elements of *Penrose,* Blue Cross suggests that we alter *Myers* by holding that the amended version of I.C. § 12–120(3) is not applicable to any lawsuit involving a *contract formed* prior to the amendment.

We decline to create such an alchemy. *Penrose* is inapposite here. It involved an insurance statute which authorized attorney fee awards only to policy holders. Because the statute shifted the balance of power between contracting parties, by identifying a favored party in the event of litigation, the Supreme Court barred its application to pre-existing contracts. *Penrose,* 75 Idaho at 540, 275 P.2d at 979 (Keeton, J., concurring). Idaho Code § 12–120(3) is different. That statute is party-neutral. It mandates fee awards to prevailing parties but does not affect bargaining relationships by designating favored parties. Therefore, the policy rationale of *Penrose* does not apply to this case.

We also believe the reasoning of *Myers* is inapplicable here. In *Myers,* we drew a line against application of I.C. § 12–120(3)

to suits filed prior to the 1986 amendment because the parties in such cases had no opportunity to weigh the risk of exposure to mandatory fee awards before deciding to litigate. That is not so here. Although the insurance policy was issued prior to the 1986 amendment, the application of the attorney fee provision was triggered only by the commencement of litigation *after* the amendment had become effective. Thus, unlike the parties in *Myers,* the parties in this case were aware of the attorney fee risk when they chose to litigate. Moreover, we note that our Supreme Court has adopted the risk-weighing rationale of *Myers. See Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989). We conclude that an attorney fee award was authorized by I.C. § 12–120(3) in this case.

## II

 Blue Cross finally argues that the award of $25,359 is an unreasonable amount. Blue Cross does not specifically contest the hours and charges upon which the fee was computed. Rather, Blue Cross simply asserts that the fee is disproportionate to the net damage award of approximately $2,300. This assertion overlooks the salient fact that the Eriksens also obtained reinstatement of the contract, with its potential coverage of future medical expenses up to $1,000,000.

The amount of an attorney fee award is directed to the sound discretion of the trial judge. We will not disturb it unless an abuse of discretion is shown. *Spidell v. Jenkins,* 111 Idaho 857, 727 P.2d 1285 (Ct. App.1986). Here, the stakes in the litigation were potentially high. Had the Eriksens not sued and prevailed, they would have been uninsured and might have faced the risk of financial ruin had a medical crisis arisen. We conclude that the magistrate did not abuse his discretion when he awarded the Eriksens $25,359 in attorney fees.

Accordingly, the district court's decision, upholding the magistrate's award of attor-

ney fees, is affirmed. Costs and attorney fees on appeal to respondents, Eriksen.

WALTERS, C.J., and BENGTSON, J., pro tem., concur.